# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**Nos. 24-1221**                                                    **September Term, 2025**

FILED ON: JUNE 10, 2026

NP RED ROCK LLC, D/B/A RED ROCK CASINO RESORT SPA,
　　　　PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
　　　　RESPONDENT

LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS,
　　　　INTERVENOR

Consolidated with 24-1239, 24-1240

———

On Petitions for Review and Cross-Application
for Enforcement of an
Order of the National Labor Relations Board

———

Before: CHILDS and PAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*

## **J U D G M E N T**

The petitions for review and the cross-applications for enforcement were considered on the record from the National Labor Relations Board, and the briefs and oral arguments of the parties. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the petitions for review are **DENIED** and the cross-applications for enforcement are **GRANTED**.

\* \* \*

1

## I.

Petitioner NP Red Rock LLC, d/b/a Red Rock Casino Resort Spa (Red Rock) is one of ten casino hotels in Las Vegas, Nevada owned and operated by Station Casinos LLC (Station).  Red Rock opened in 2006 as Station's largest property, comprising 800 hotel rooms, 2,700 slot machines, 64 gambling tables, 9 full-service restaurants, a 16-screen movie theatre, a 72-lane bowling alley, and 94,000 square feet of meeting and convention space—all operated by over 1,300 employees.  Starting in 2016, the Local Joint Executive Board of Las Vegas (the Union) began organizing employees across Station properties.  The employees that the Union sought to organize included culinary and non-gaming employees in departments such as food and beverage, banquet/catering, bell, housekeeping, sanitation, and internal maintenance.  By mid-June 2019, the Union had successfully organized several thousand employees at six Station properties: Boulder Station in September 2016, Palace Station in March 2017, Green Valley Ranch in November 2017, Palms in April 2018, and both Sunset Station and Fiesta Rancho in June 2019.  In late 2019, the Union attempted to organize at Red Rock.  When only 46% of the employees voted to unionize, the Union filed numerous election objections and unfair labor practice challenges with the National Labor Relations Board (the Board).  The Agency's Regional Director, on behalf of the Board's General Counsel, issued a complaint alleging that Red Rock's and Station's supervisors or agents had committed approximately 50 violations of the National Labor Relations Act (the Act) both before and after the union petition and the election.  After an extensive hearing, an Administrative Law Judge (ALJ) found that Red Rock had committed "most" of the General Counsel's unfair labor practice allegations.  J.A. 14.[1]

The Board adopted in substantial part the ALJ's findings.  As pertinent here, the Board found that Red Rock violated Section 8(a)(1) of the National Labor Relations Act of 1935, Pub. L. No. 74-198, 49 Stat. 449 (codified as amended at 29 U.S.C. §§ 151–169), by: (1) promising, announcing, and implementing substantially improved benefits for Red Rock employees in order to discourage Union support, (2) threatening to withhold or withdraw benefits if employees selected the Union, (3) implicitly threatening that supporting the Union would be futile, (4) threatening employees with job loss as a result of strikes, (5) interrogating an employee about her Union sympathies, (6) posting photographs of employees on an anti-union website without their consent, and (7) serving free steaks branded with the words "Vote No" in the Red Rock employee dining room.  *NP Red Rock LLC* (*Board Order*), 373 NLRB No. 67, 2024 WL 3063775, at *1 & n.4 (June 17, 2024).  The Board also found that Red Rock violated Section 8(a)(1) and (3) by issuing discriminatory disciplinary warnings and discriminatory work assignments to union supporters, and by failing to recall an employee from a COVID-related layoff because of her union

---

[1]  The hearing before the ALJ took place over 58 days between October 27, 2020, and June 16, 2021, during which a total of 77 witnesses were called to testify and over 400 exhibits were introduced into evidence.  The parties also submitted post-hearing briefing.

activity.[2]  *Id.*  Finally, the Board agreed with the ALJ that Red Rock's "egregious and pervasive" conduct warranted a remedial bargaining order.  *Id.* (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969)).[3]

Red Rock petitioned for review of the Board's decision; the Board and the Union filed cross-applications for enforcement.[4]

## II.

We have jurisdiction to review the parties' petitions under 29 U.S.C. § 160(e) and (f).  Our "review of the Board's unfair labor practice decisions is tightly cabined," and affords the Board "a high degree of deference."  *Absolute Healthcare v. NLRB*, 103 F.4th 61, 67 (D.C. Cir. 2024) (citation modified).  We "will uphold the decision of the Board unless it was arbitrary or capricious or contrary to law, and as long as its findings of fact are supported by substantial evidence in the

---

[2]  The Board disregarded Red Rock's challenge to the ALJ's conclusion that it violated Section 8(a)(1) and (5) "by failing to offer the Union notice and an opportunity to bargain prior to cancelling table-swap agreements" because Red Rock failed to state, "either in its exceptions or supporting brief, any grounds on which the judge's purportedly erroneous conclusion should be reversed."  *Board Order*, 2024 WL 3063775, at *1 n.4 (citing *Security Walls, LLC*, 371 NLRB No. 74, slip op. at 3 n.15 (2022), *enforced* 80 F.4th 1277 (11th Cir. 2023); *Holsum de Puerto, Inc.*, 344 NLRB 694, 694 n.1 (2005), *enforced* 456 F.3d 265 (1st Cir. 2006)).  The Board also held that, in any event, it agreed with and affirmed the ALJ's conclusion that Red Rock violated the Act as alleged on the merits.  *Id.*  Red Rock does not challenge this part of the Board's order.

[3] The Board also concluded that Red Rock violated Section 8(a)(5) and (1) by refusing to recognize and bargain with the Union.  *Board Order*, 2024 WL 3063775, at *6 n.31.  Red Rock purports to challenge this finding by listing it in the issue section of its opening brief, Op. Br. 2, but has forfeited this challenge because it failed to provide any "legal argument" in the argument section, *Laurel Bay Health & Rehab. Ctr. v. NLRB*, 666 F.3d 1365, 1367 n.2 (D.C. Cir. 2012).

[4]  The Union also petitioned for review, contending that the Board improperly declined to include certain union-access remedies.  The Board considered whether "additional remedial provisions . . . designed to enhance the Union's access to . . . employees prior to a second election" were necessary.  *Board Order*, 2024 WL 3063775, at *14 n.76.  Yet because it was issuing an "affirmative bargaining order," the Board determined that additional remedies were unnecessary.  *Id.*  "A party challenging the Board's choice of remedy must show that the remedy is clearly inadequate in light of the findings of the Board."  *United Food & Com. Workers Union Loc. 204 v. NLRB*, 447 F.3d 821, 828 (D.C. Cir. 2006) (citation modified).  Nothing in the Union's brief indicates that the Board's extensive remedial measures, including the bargaining order, are "clearly inadequate."  *Id.*  Nor, as the Union conceded at oral argument, do "union access remedies always have to accompany a bargaining order where the Board finds the conduct severe and pervasive."  Oral Argument at 19:58.  Indeed, at oral argument counsel for the Union informed the court that it is "more important" to the Union that the court affirm the Board's order as is.  Oral Argument at 17:20.  We thus deny the Union's petition.

record as a whole." *Oak Harbor Freight Lines, Inc. v. NLRB*, 855 F.3d 436, 440 (D.C. Cir. 2017). In reviewing the Board's decisions for substantial evidence, we do not "displace the Board's choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "We are even more deferential when reviewing the Board's conclusions regarding [] motive, because most evidence of motive is circumstantial." *Traction Wholesale Ctr. Co. v. NLRB*, 216 F.3d 92, 99 (D.C. Cir. 2000) (quoting *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 734 (D.C. Cir. 2000)). Finally, we accept all credibility determinations made by the ALJ and adopted by the Board unless those determinations are "patently insupportable." *Id.* (quoting *Exxel/Atmos, Inc. v. NLRB*, 28 F.3d 1243, 1246 (D.C. Cir. 1994)).

### III.

In challenging the Board's order, Red Rock presses several arguments on appeal. Yet because its arguments either lack merit, were forfeited, or were not properly preserved, we deny Red Rock's petition and grant the Board's and the Union's cross-applications for enforcement.

### A.

Red Rock first challenges the Board's findings that it violated Section 8(a)(1) and (3) of the Act.

Section 7 of the Act protects employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

Section 8(a)(1) makes it an "unfair labor practice" to "interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. *Id.* § 158(a)(1). An employer violates Section 8(a)(1) by promising or conferring benefits if the employer's "purpose" is to "induc[e] employees to vote against the union." *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964). An employer also "violates section 8(a)(1)'s bar on interfering with employees' exercise of their Section 7 rights when it makes 'coercive statements that threaten employees with job loss . . . in retaliation for protected union activities.'" *Care One at Madison Ave., LLC v. NLRB*, 832 F.3d 351, 360 (D.C. Cir. 2016) (quoting *Progressive Elec., Inc. v. NLRB*, 453 F.3d 538, 544 (D.C. Cir. 2006)). Section 8(a)(3) makes it an "unfair labor practice" to "discriminat[e] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

As an initial matter, Red Rock forfeited its challenges to many of what it refers to in its Opening Brief as "miscellaneous" violations. Op. Br. 47. These "miscellaneous" violations include the Board's findings that Red Rock violated the Section 8(a)(1) and (3) of the Act by:

(1) threatening to withhold or withdraw benefits if employees selected the Union, (2) implicitly threatening that supporting the Union would be futile, (3) posting photographs of employees on an anti-union website without their consent, (4) serving free steaks branded with the words "Vote No" in the Red Rock employee dining room, and (5) issuing discriminatory work assignments to union supporter Maria Gutierrez. *Board Order*, 2024 WL 3063775, at *1. In its opening brief, Red Rock challenges each of these "miscellaneous" violations with a short conclusory statement asserting that the Board "erroneously found" the violation. *See* Op. Br. 47–53. Red Rock does not, however, explain how the Board erred, provide any substantive legal argument, or cite to the parts of the record on which it relies to support its challenge to the Board's findings. *See Dunkin' Donuts Mid–Atlantic Distrib. Ctr., Inc. v. NLRB*, 363 F.3d 437, 441 (D.C. Cir. 2004) ("[The] argument portion of an appellant's opening brief 'must contain' the 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" (quoting Fed. R. App. P. 28(a)(9)(A))); *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). Because we conclude that Red Rock forfeited its challenges to the foregoing unfair labor practice violations, we affirm the Board's findings without expressing an opinion on the merits.

As for Red Rock's other challenges, it has not shown that any of the Board's factual findings supporting its determination that Red Rock violated Section 8(a)(1) and (3) are unsupported by "substantial evidence in the record as a whole," *Oak Harbor Freight Lines*, 855 F.3d at 440, or that the ALJ's credibility determinations are "patently insupportable," *Traction Wholesale Ctr.*, 216 F.3d at 99. We agree with the Board that substantial evidence supports the factual findings underlying its conclusions that: (1) Red Rock's primary purpose and motive in seeking to implement improved employee benefits was to combat the Union's campaign; (2) Red Rock timed its announcement of the new employee benefits in order to undermine the Union election scheduled for the following week; (3) Red Rock implicitly threatened employees with job loss by repeatedly warning that if employees selected the Union and the Union was dissatisfied with the bargaining process, the Union could call for an economic strike and Red Rock could then permanently replace striking employees; (4) the final written warning issued to employee Claudia Montano was motivated, at least in part, by Montano's union activity and not by her having committed the alleged infractions or pursuant to Red Rock's established practice; (5) Red Rock's purported reasons for not recalling Teresa Powers were pretextual and aimed at ensuring there would be fewer union leaders in the voting unit in the event that a new election was ordered; and (6) Red Rock interrogated long-time active Union supporter Luz Gomez about her support for the Union.[5] The Board, in reaching these conclusions, relied on numerous witnesses' testimonies,

---

[5] Red Rock objects to the Board's adoption of the ALJ's finding that Red Rock engaged in objectionable conduct by excluding certain pro-union employees from captive audience meetings. By not providing any legal argument to that effect in its opening brief, however, Red Rock forfeited

extensive record evidence, and the ALJ's credibility determinations based on the same.  That evidence was "substantial" in that it constituted "such relevant evidence as a reasonable mind might accept as adequate to support [the Board's] conclusion[s]."  *See DHSC, LLC v. NLRB*, 944 F.3d 934, 937 (D.C. Cir. 2019) ("Substantial evidence is not a high bar.").

Because Red Rock either forfeited its arguments or the Board's unfair labor practice determinations were supported by substantial evidence, we reject Red Rock's arguments on this score.

## B.

We turn next to Red Rock's challenges to various aspects of the Board's remedial order. We address and reject each challenge in turn.

Section 10(c) of the Act grants the Board the power to remedy unfair labor practices by ordering an employer to "take such affirmative action . . . as will effectuate the policies of [the Act]."  29 U.S.C. § 160(c).  The Board, "[i]n fashioning its remedies . . . draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts."  *Gissel*, 395 U.S. at 612 n.32.  As the reviewing court, our "essential task" is "to assure ourselves that the Board has considered the factors which are relevant to its choice of remedy, selected a course that is remedial rather than punitive, and chosen a remedy which can fairly be said to effectuate the purposes of the Act."  *RAV Truck & Trailer Repairs, Inc. v. NLRB*, 997 F.3d 314, 329 (D.C. Cir. 2021) (quoting *Traction Wholesale Ctr.*, 216 F.3d at 104). If the Board has done all this, then we will not disturb its decision.  *See Traction Wholesale Ctr.*, 216 F.3d at 104.

To start, Red Rock argues that the Board's issuance of a remedial bargaining order under *NLRB v. Gissel Packing Co.*, which directed Red Rock to bargain with the Union, was unreasonable.  *See* 395 U.S. 575.  "[A]bsent 'outrageous and pervasive [unfair labor practices],'" *Skyline Distribs. v. NLRB*, 99 F.3d 403, 410 (D.C. Cir. 1996), a remedial *Gissel* bargaining order is warranted if:  (1) "the Union, at some time, . . . had majority support within the bargaining unit;" (2) "the employer's unfair labor practices . . . had the tendency to undermine majority strength and impede the election process;" and (3) "the possibility of erasing the effects of past practices and of ensuring a fair rerun election by the use of traditional remedies is slight" and "employee sentiment once expressed in favor of the Union would be better protected by a bargaining order."  *St. Francis*

---

this argument.  *See Dunkin' Donuts*, 363 F.3d at 441 (enforcing rule that "argument portion of an appellant's opening brief 'must contain' the 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" (quoting Fed. R. App. P. 28(a)(9)(A)));  *e.g., Laurel Bay Health*, 666 F.3d 1365 at n.2 (applying *Dunkin' Donuts*). In finding Red Rock forfeited its objection, we express no opinion on the merits of the alleged unfair labor practice.

*Fed'n of Nurses & Health Pros. v. NLRB*, 729 F.2d 844, 854–55 (D.C. Cir. 1984). The Board reasonably determined, based on substantial evidence, that Red Rock's conduct resulting in dozens of unfair labor practices was so "pervasive and egregious" as to "warrant[] a remedial affirmative bargaining order under [*Gissel*]." *Board Order*, 2024 WL 3063775, at *6. And besides, the Board found that the record in this case satisfied all three *Gissel* requirements.

First, as Red Rock concedes, substantial evidence supports the Board's findings that the Union had the support of a majority of employees in the bargaining unit at one time.

Second, substantial evidence supports the Board's determination that Red Rock's pervasive unfair labor practices had the "tendency to undermine majority strength and impede the election process." *St. Francis*, 729 F.2d at 854. As the Board found, the new benefits Red Rock announced were extensive; Red Rock specifically crafted the new benefit plan to counteract the Union; details about the new benefits and associated messaging were disseminated to all or nearly all unit employees; Red Rock's announcement of the new benefits the week before the election "worked as intended" by "inducing many unit employees to visibly and publicly renounce the Union"; the grant of new benefits was accompanied by dozens of unfair labor practices committed by high-ranking executives, managers, and supervisors; and Red Rock's unlawful conduct continued even after the Union lost the election. *Board Order*, 2024 WL 3063775, at *6–7.

Third, the Board reasonably concluded that the "possibility of erasing the effects" of Red Rock's violations and "ensuring a fair rerun election" using "traditional remedies" was "slight." *Board Order*, 2024 WL 3063775, at *7. As the Board explained, unlawfully granted benefits are capable of having "a particularly longlasting [sic] effect on employees and are difficult to remedy by traditional means not only because of their significance to the employees, but also because the Board's traditional remedies do not require [an employer] to withdraw the benefits from employees." *Id.* (citing *Evergreen Am. Corp.*, 348 NLRB 178, 180 (2006), *enforced* 531 F.3d 321 (4th Cir. 2008)). Additionally, as the Board concluded, Red Rock had "intentionally designed" the benefits plan to "interfere with employees' free choice whether or not to select the Union as their collective-bargaining representative" and executed their plan through a "coordinated unlawful campaign." *Id.* at *6–7. This intentional and coordinated effort indicated "a strong likelihood of a recurrence of unlawful conduct in the event of another organizing effort." *Id.* (quoting *Garney Morris, Inc.*, 313 NLRB 101, 103 (1993), *enforced* mem. 47 F.3d 1161 (3d Cir. 1995)). Under such circumstances, the Board reasonably concluded that traditional remedies were ill-suited for "erasing the effects" of the unlawful benefits and "ensuring a fair rerun election." *St. Francis*, 729 F.2d at 854.

More to that point, the Board's bargaining order here is consistent with our precedent. *See, e.g.*, *St. Francis*, 729 F.2d at 855 (enforcing *Gissel* bargaining order where Board "emphasized the pervasiveness of the [employer]'s unlawful conduct when it explained why a bargaining order would better protect employee sentiment previously expressed through authorization cards" and

"relied upon the whole litany of unfair labor practices that characterized the [employer]'s anti-Union campaign—interrogations, threats, and promises of benefits—in deciding that a bargaining order was appropriate"); *cf. Skyline*, 99 F.3d at 410 (declining to enforce the Board's *Gissel* bargaining order where the unfair labor practices were "far from serious"). We thus hold that the Board was justified in determining that a *Gissel* bargaining order was warranted.[6]

Next, Red Rock challenges various discrete aspects of the Board's remedial order. Red Rock asserts that two of the ordered remedies—the cease-and-desist order and the explanation-of-rights notice requirement—are unreasonable because its conduct was not so "egregious or widespread" to warrant such remedies. Op. Br. 55. This argument contravenes the Board's findings. As discussed above, the Board found, based on substantial evidence, that Red Rock's conduct was "pervasive and egregious." *Board Order*, 2024 WL 3063775, at \*6; *see also id.* at \*1. And we have previously recognized that cease-and-desist orders and explanation-of-rights notice requirements are appropriate to remedy such conduct. *See Federated Logistics & Operations v. NLRB*, 400 F.3d 920, 929–30 (D.C. Cir. 2005) (enforcing broad cease-and-desist order and notice requirement to remedy "persistent and widespread" conduct).

Red Rock also asserts that the Board abused its discretion by requiring the notice be read to employees by Red Rock's Vice President of Human Resources or by a Board agent in their presence.[7] Yet "a public reading may be appropriate where, as here, upper management has been directly involved in multiple violations of the Act." *Veritas Health Servs., Inc. v. NLRB*, 895 F.3d 69, 86 (D.C. Cir. 2018). Such remedies fall within the Board's broad discretionary power, and we see no reason to interfere with this aspect of the Board's remedial order.[8]

---

[6] Alternatively, the Board ruled that the remedial bargaining order was warranted under its recent decision in *Cemex Construction Materials Pacific, LLC*, 372 NLRB No. 130 (Aug. 25, 2023). Because we affirm the Board's imposition of the bargaining order under *Gissel*, we need not consider whether the bargaining order is separately warranted under *Cemex*.

[7] Red Rock also asserts that the Board "erroneously ordered" Red Rock to require that its Chief Operating Officer "attend at least one meeting; that the Union be permitted to attend the meetings; and that the meetings be scheduled so that supervisors and managers attend alongside the employees that they supervise/manage." Op. Br. 55–56. But Red Rock forfeited this argument by not providing a substantive "legal argument" in support of its assertion that the Board erred in ordering these particular remedies. *Laurel Bay Health*, 666 F.3d at 1367 n.2. We accordingly do not reach the merits.

[8] We lack jurisdiction under Section 10(e) of the Act to consider Red Rock's challenge to the Board's order directing Red Rock to compensate employees affected by Red Rock's unilateral cancellation of a table-swap settlement agreement with the Union because Red Rock did not raise this challenge in its exceptions to the Board. *See* 29 U.S.C. § 160(e); *e.g.*, *Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 166–68 (D.C. Cir. 2016) (declining to exercise jurisdiction over a challenge

**C.**

Finally, Red Rock attempts to challenge the entire proceeding by advancing a series of constitutional arguments, none of which succeed.

First, Red Rock asserts that the Board's wielding of both prosecutorial and adjudicative powers violated its due process rights.  But we have already "join[ed] other circuits" and held that "the Board's authority under the Act to seek preliminary injunctive relief against an employer in the district court does not deprive the employer of a neutral decisionmaker in subsequent proceedings before the Board."  *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998).

Second, Red Rock asserts that the Board is structurally unconstitutional because ALJs and members of the Board are insulated from removal.  Because Red Rock did not raise this argument before the Board and has not attempted to justify its failure to do so, we lack jurisdiction to consider it.  *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *e.g.*, *Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 166 (D.C. Cir. 2016) (declining to address arguments not first presented to the Board).

Third, Red Rock lists in the *issue* section of its opening brief, "[w]hether the Board's adjudication of private rights without a jury trial violated the Seventh Amendment."  Op. Br. 3.  But Red Rock has forfeited this argument because it failed to provide a "legal argument" on this issue in its opening brief.  *Laurel Bay Health & Rehab. Ctr. v. NLRB*, 666 F.3d 1365, 1367 n.2 (D.C. Cir. 2012).

**IV.**

Because we find all of Red Rock's arguments are either barred or without merit, we deny Red Rock's petition for review and grant the Board's and the Union's cross-applications for enforcement.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for hearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

---

not raised before the Board).  The Board notes Red Rock's failure to raise this argument below and Red Rock does not address this preservation error in its Reply Brief.

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk